UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3 / 5 / 2018

MS ELMSFORD SNACK MART, INC.,

               Plaintiff,

   -against-

JAMES A. WEIL, individually and as a Manager of
NY FUEL DISTRIBUTIONS, LLC, LEON
SILVERMAN, individually and as a Manager of NY
FUEL DISTRIBUTORS, LLC, MARC WEIL,
individually and as a Shareholder of MS
ELMSFORD SNACK MART, INC., NY FUEL
DISTRIBUTORS, LLC, NY DEALER STATIONS,
LLC, COCO FARMS BUYING GROUP, INC., and
COCO FARMS OF ELMSFORD, INC.,

               Defendants.

14-cv-2226(NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff MS Elmsford Snack Mart, Inc. ("MSE"), commenced this action against

Defendants James Weil, Leon Silverman, Marc Weil, New York Fuel Distributors, LLC

("NYFD"), New York Dealer Stations, LLC ("NYDS"), Coco Farms Buying Group, Inc., and

Coco Farms of Elmsford, Inc., alleging wrongful termination of a contract under the Petroleum

Marketing Practices Act, wrongful termination of a contract under GBL § 199-a, breach of

contract, and other state contract-based claims. (*See generally* First Amended Complaint

("Amended Compl."), ECF No. 23.) Before the Court is Defendants' Motion for Summary

Judgment. For the following reasons, the motion is GRANTED.

## BACKGROUND

The following facts are drawn from the parties' 56.1 submissions, the record, and are undisputed unless otherwise noted.

### The Gasoline Station

This case arises from a business venture gone awry. Defendant New York Fuel Distributors ("NYFD") is a company that supplies gasoline as a franchisor to gasoline stations in New York. NYFD also owns and leases gasoline stations, and leases such stations to franchises in New York. (Amended Compl. ¶ 6.) Around the year 2010, NYFD was searching for an operator to lease its gasoline station located at 58 North Saw Mill River Road in the Village of Elmsford, New York (the "subject site"). (Amended Compl. ¶ 12.)[1] Plaintiff MS Elmsford ("MSE") was formed in or about August or September of 2010 for the operation of the subject site. (Def. 56.1 ¶¶ 1–2, ECF No. 77; Amended Compl. ¶ 14.) Sammy ElJamal ("Sammy"), who owns 50% of MSE stock (Def. 56.1 ¶ 3), arranged to have his other companies "loan" an employee, named Hani Sadallah ("Sadallah"), to MSE to set up the site where MSE operated. (*Id.* ¶ 4.) Sadallah would facilitate the hiring of employees, the "turning on" of the MSE service station, and would work at the service station. (*Id.* ¶¶ 5–6; Pl. 56.1 ¶ 7, ECF No. 81.) During the creation of MSE, Sammy asked his father Musa ElJamal ("Musa") to help set up the site and to handle the banking aspects of the operation with Sadallah. (Def. 56.1 ¶ 8.)

After NYFD acquired the rights to supply wholesale motor fuel to the subject station in June of 2010 (*Id.* ¶ 12), MSE began operating the subject station in August or September of the

_____

[1] NYFD controlled the subject site pursuant to a lease that was assigned by Motiva Enterprises. (Amended Compl. ¶ 13; Def. 56.1 ¶ 13.)

same year. (*Id.* ¶¶ 9–10.) The Amended Complaint alleges that on August 5, 2010, MSE and NYFD entered into a Commission Agent Lease ("COMA") and Retail Facility and Petroleum Marketing Practices Act[2] ("PMPA") Lease. (Amended Compl. ¶ 16; *see also* Def. 56.1 ¶ 15.). Pursuant to the PMPA lease, MSE became a franchisee of the subject site. (Amended Compl. ¶ 17.) In anticipation of a planned construction on the site, however, MSE agreed that it would sell gasoline temporarily as a Commission Agent[3] until the site was closed for construction by NYFD. (*Id.*) According to the oral contract entered into by MSE and NYFD, the latter would abate the entire monthly rent and toll the PMPA lease term from June 2011 until the completion of construction. (Def. 56.1 ¶ 16; Amended Compl. ¶¶ 18, 21, 22, 90.) The oral agreement tolling the lease was never memorialized in writing. MSE operated the station and sold gasoline as a commission agent until about June 2011. (Def. 56.1 ¶ 11.)

## The Contract in Question

Under the PMPA lease signed by the parties, MSE would purchase gasoline from Defendant NYFD. NYFD was obligated to provide gasoline to MSE under a trademark owned by Shell Oil Company and controlled by the owner of the station, Motiva. MSE would pay for all "basics" to open the gas station and operate it until it closed for construction, while Defendant NYFD would fund and perform the construction and improvements after closure (Amended Compl. ¶¶ 18–19.) MSE allegedly performed in conformity with the agreement until the site closed for construction in 2011. (*Id.* ¶ 20.)

---

[2] *See* 15 U.S.C. § 2802.
[3] As a Commission Agent, MSE would not purchase gasoline from NYFD, but rather, MSE would sell gasoline and receive a commission for each gallon sold. (Amended Complaint at ¶¶ 17–18.)

The PMPA lease and Commission Lessee Agreement at issue in this case are not currently before the Court. During discovery, both NYFD and MSE produced versions of the contract, however, it is Sammy's position that the contracts produced were not the ones that he signed, and thus, not the agreements which governed the NYFD-MSE relationship. (Def. 56.1 ¶¶ 17, 21, 23.)[4] As a result, the written contract is not currently before the Court.

In any event, Plaintiff provided information concerning the terms of the contract. Among the terms, the agreement provided for "four five [y]ear" renewal options, automatic renewal every three years, and provided MSE with a right of first refusal. (*Id.* ¶ 25.)

The Amended Complaint alleges that under a subsequent agreement, MSE would operate the site until it closed for construction and that NYFD would fund the construction. (Amended Compl. ¶19; Def. 56.1 ¶ 55.) Sammy testified that the agreement was in writing and that Sammy modeled it after one he previously used. (*See* Def. 56.1 ¶ 56.)

### Termination of the Deal

At the end of the construction, NYFD allegedly did not honor their purported agreement and demanded that MSE enter into a new lease with NYFD. (Amended Compl. ¶ 28.) MSE had not operated the station since its closure for construction in 2011. The reason for why MSE stopped operating the station is contested.

Sammy first testified that he did not know the specific reason why MSE closed the operations of the service station in June 2011, and that he does not know who would know the reason. (Def. 56.1 ¶¶ 26–27.) Sammy recalled that he and Defendant James Weil decided that MSE would close operations as a service station, and noted that James Weil may be in

---

[4] Plaintiffs allege that the agreement Sammy signed is located in NYFD's office in White Plains. (Pl. 56.1 ¶ 24.)

possession of meeting minutes and agendas that memorialized the action (Def. 56.1 ¶¶ 28–29; Pl. 56.1 ¶ 29.)

Sadallah, on the other hand, testified that Sammy decided that MSE would stop operating the station in its entirety and would return it to NYFD. (Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34.)[5] Sadallah further testified that as early as May 19, 2011, Sammy told him that he was starting "a war" with NYFD and that he was giving back the keys to the MSE station. (Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.) Poignantly, Sammy was returning the keys because he wanted to "cripple" NYFD. (Def. 56.1 ¶ 39; *but see* Pl. 56.1 ¶ 39.) Sammy's father took a different position on the matter. Musa told Sadallah that that they were returning the keys because the site was not good enough. (Def. 56.1 ¶ 40.)[6] Plaintiff denies those statements being made. (Pl. 56.1 ¶ 40.) Sadallah further testified that Sammy's legal assistant prepared a letter for Sadallah to sign which indicated that he was giving back the MSE station. (Def. 56.1 ¶ 37.) Sadallah was then instructed to sign and send the letter returning the subject site. (*Id.* ¶¶ 37–38.) Plaintiff disputes that Sammy and Musa were both present when Sadallah was instructed to sign the letter and return the subject station to NYFD. (Opp. 56.1 ¶ 38.)[7]

According to the Defendants, both Musa and Sammy reviewed the termination letter prior to its delivery to the proper authority, Brent Coscia, on May 20, 2011. (Def. 56.1 ¶¶ 49–50; *but see* Pl. 56.1 ¶¶ 49–50.) Plaintiff avers that they never notified Brent Coscia about returning

---

[5] Plaintiff maintains that they stopped operating because the subject site was scheduled to begin demolition, construction and renovation. (Pl. 56.1 ¶ 34.)

[6] MSE was not able to operate profitably before it ceased operations. (Def. 56.1 ¶ 30.)

[7] Plaintiff also denies that Sammy and Musa instructed Sadallah to prepare the letter dated May 20, 2011, advising that the subject station would no longer be run as commission agent sites and that the subject site was being returned. (Pl. 56.1 ¶ 45.)

the keys to the subject station (Pl. 56.1 ¶ 44) [8] nor that they instructed Sadallah to prepare the May 20, 2011 letter which advised that MSE would no longer run the subject station as Commission Agent sites and that they were being returned. (Def. 56.1 ¶¶ 42–43, 45; *compare with* Pl. 56.1 ¶¶ 42–43.) Notwithstanding, Sadallah did send Brent Coscia the notification letter in which Sadallah stated that the keys to the subject station were being returned on or about May 20, 2011. (Def. 56.1 ¶ 44.)

It is further contested whether Sadallah was authorized by MSE, Sammy or Musa to deliver the termination letter to Coscia and whether Sadallah actually delivered it. (Def. 56.1 ¶¶ 51–54; Opp. 56.1 ¶¶ 51–54). In any event, Sammy acknowledged that he received an email from Coscia in which Coscia wrote that Sadallah gave him a letter which stated that Sadallah was giving back the keys to subject station. (Def. 56.1 ¶ 41.) Sammy testified that he did not understand the email as it did not make sense to him. (Opp. 56.1 ¶ 41.)

As a result of the alleged breach of contract, Plaintiff alleges that they suffered losses while operating the subject site and during construction. (*See e.g.*, Def. 56.1 ¶ 59–62, 73; Opp. 56.1 ¶ 73.)

## STANDARD ON SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[8] Plaintiff notes that Sammy was unaware of Sadallah's letter notification. Plaintiff further posits that Sadallah did not have the authority to turn in the keys. (*See* Pl. 56.1 ¶ 42.)

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

Plaintiff brings eleven[9] causes of action stemming from their business dealings with the Defendants. Ultimately, Summary Judgment must be granted because the Plaintiff made admissions to issues of material fact. In order to provide the necessary context for those admissions, however, the Court finds it prudent to outline the underlying breach of contract claims.

---

[9] The Amended Complaint asserts twelve causes of action. Former Plaintiff Sammy ElJamal voluntarily discontinued the twelfth claim on September 10, 2014.

## A. **Breach of Contract**[10]

Plaintiff claims that Defendant NYFD breached the PMPA and COMA lease as well as the alleged subsequent oral modification of the PMPA lease. (Amended Compl. ¶¶ 64–70, 90–96.)

To succeed in a breach of contract claim under New York Law, Plaintiff must show "(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *United States Bank Nat'l Ass'n, v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443, 447 (S.D.N.Y. 2013) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir.2011)). The existence of a contract is a necessary element of a breach of contract claim. *Duckett v. Williams*, 86 F. Supp. 3d 268, 272 (S.D.N.Y. 2015).

The party alleging a breach of contract must "demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement." *Mandarinn Tradit Ltd. V. Wildenstein*, 944 N.E.2d 1104, 1110 (2011) (quotations and citation omitted).  It is incumbent upon the Plaintiff to provide the contract or sufficient evidence from which the essential terms of the contract can be ascertained. *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y 2002).

At times, a party may allege the existence of a written contract, but cannot produce a physical contract to the Court. Relief "for an alleged breach of a written contract cannot be granted where the alleged contract has not been produced, plaintiff's testimony regarding the alleged contract is inconclusive, essential terms of the alleged contract are in doubt, and no

---

[10] The Court reserves judgment on whether there is an issue of material fact on both breach of contract claims.

satisfactory evidence of an alleged breach has been adduced." *Sims v. Blanchris, Inc.*, 648 F. Supp. 480, 485 (S.D.N.Y. 1986); *see Archie Comic Publications, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 329 (S.D.N.Y 2003). "Essential terms are usually limited to price, quantity, and time." *In Re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 523 (Bankr. S.D.N.Y. 1994); *see also DiMare Homestead, Inc. v. Alphas Co. of New York, Inc.*, No. 09 Civ. 6644(PKC), 2012 WL 1155133, at *24 (S.D.N.Y. Apr. 5, 2012).

Defendants argue that because the Plaintiff is unable to produce the PMPA and COMA lease they signed, Plaintiff cannot establish the first prong of a breach of contract claim, and thus, the claim should be dismissed. (Def. Mem. of Law in Supp. of Rule 56 Mot. ("Def. Mot.") 10, ECF No. 77.) In this case, it is undisputed that a contract existed between MSE and NYFD. The whereabouts of the physical contract, however, is an open question. In lieu of the physical contract, Plaintiff offered detailed affidavits concerning the essential terms of the contract. According to the affidavits, MSE agreed with NYFD that MSE would become a retailer and a franchisee of NYFD under the PMPA, and that MSE established a franchise relationship with NYFD "as defined by the PMPA for the subject station." (Decl. of Dana G. Khalife in Opp. to Def. Mot., Exh. 1 ("Sammy Aff.) ¶ 7, Exh. 2 ("Musa Aff.") ¶ 7, ECF No. 79–80.) Further, MSE would pay for all "basics" to open the gas station and would operate it. (Sammy Aff. ¶ 10.)

## B. Oral Agreement to Toll PMPA Lease

Turning to the breach of the oral agreement under which NYFD would allegedly toll the PMPA lease for the duration of construction on the subject site, there appears to be some evidence as to whether the parties reached an oral agreement modifying the PMPA lease.

Under New York Law, a written contract may be modified by an oral agreement "as long as it contains no provision forbidding oral change." *Regent Partners, Inc. v. Parr Development*

*Co., Inc.*, 960 F. Supp. 607, 615 (E.D.N.Y. 1997). Any oral modifications to written contracts must be proven by clear and convincing evidence such as contemporaneous documentary support. *Faust Harrison Pianos Corp. v. Allegro Pianos, LLC*, No. 09 Civ. 6707(ER), 2013 WL 2292050, at *15 (S.D.N.Y. May 24, 2013). Summary judgment, however, is improper where there exists "genuine issues of material fact with respect to whether the parties reached an oral agreement." *Consarc Corp. v. Marine Midland Bank*, *N.A.*, 996 F.2d 568, 577 (2d Cir. 1993). Ultimately, "[w]hat matters to a court's determination of the existence of a contract are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances." *Philips Credit Corp. v. Regent Health Group, Inc.*, 953 F. Supp. 482, 510 (S.D.N.Y. 1997).

Sammy's Affidavit states that MSE and NYFD agreed that the PMPA lease should be suspended during construction and that a rent abatement would apply until the site reopened. (*See* Sammy Aff. ¶ 12.) Further, Sammy stated that the Defendants agreed that rent payments under the PMPA lease and the expiration of the lease would be suspended for the duration of the construction. (*Id.* ¶ 13.) In conformity with the agreement, MSE worked at the station until the site's closure for construction in June of 2011. (*Id.* ¶ 11.) Musa offered sworn statements to the same effect. (Musa Aff. ¶¶ 12–13.)

### C. Abandonment of Subject Station

Ultimately, the Court grants summary judgment on all of the contract claims because the Plaintiff's admissions provide uncontroverted evidence that they abandoned their contractual rights to the subject station before construction began in 2011.

Under New York law, "[c]ontractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned." *Fundamental Portfolio Advisors, Inc. v. Tocqueville*

*Asset Management, L.P.*, 850 N.E.2d 653, 658, (2006). Abandonment "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Id.* (internal quotations and citations omitted). Such abandonment must be based on a "'clear manifestation of intent' to relinquish a contractual protection." *Id.* (citing *Gilbert Frank Corp. v. Federal Ins. Co.*, 520 N.E.2d 512, 514 (1988)). A contract is abandoned when "one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior. That is, the refusal of one party to perform [the] contract amounts to an abandonment of it, leaving the other party to his [or her] choice of remedies, but his [or her] assent to abandonment dissolves the contract so that he [or she] can neither sue for a breach nor compel specific performance." *Aliperti v. Laurel Links, Ltd.*, 810 N.Y.S.2d 921, 922 (Mem) (2d Dept. 2006).

The Defendant argues that MSE intentionally surrendered the station and waived any rights it may have had to operate the station. (Def. Mot. 13.) The Defendants offer Sadallah's testimony, which suggests that Sammy wanted Sadallah to return the keys for MSE because he wanted to damage NYFD. (*Id.* 13–14.) Further, Sadallah testified that he was specifically instructed to sign a letter which was written by Sammy's paralegal and which stated the subject site would be returned. (*Id.*) Finally, Sadallah testified that Sammy and Musa were present when Sadallah signed the letter, and Musa agreed with the closure of the station because it was losing money. (*Id.* 13–14.) These assertions, if true, would suggest that MSE did not leave the subject stations because of the purported oral agreement, but rather, on their own volition, and not in conformity with the alleged contractual obligations.

Defendant further argues that Plaintiff admitted these "dispositive" facts. (*Id.* 14.) Defendants served a Request for Admission ("RFA") on MSE which sought admissions as to the

fact that Sadallah had authority to sign the letter on MSE's behalf, and that his delivery of the letter was with Sammy and Musa's knowledge and under their direction. (*Id.*) MSE never denied the RFA and as thus, the Court can properly consider the information therein admitted.

Plaintiff retorts by arguing that the failure to respond to the RFA should be excused as a "default" in the interest of justice because it constituted clear attorney error by their previous counsel. (Mem. of Law in Opp. to Def. Mot. Summ. J. ("Pl. Opp.") 7–8., ECF No. 82.) Plaintiff posits that their first attorney failed to respond to the RFA or maintain a copy of it in MSE's file and that neither MSE's current counsel, president, nor vice-president were aware of the RFA. (*Id.* 8.) Further, Plaintiff concedes that the allegations in the RFA are "at the heart of the controversy" and note that the allegations run contrary to their pleadings. (*Id.* 7.)

Federal Rule of Civil Procedure 36(a)(3) states that a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Further, any "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).[11] The Court also has the power, under the proper circumstances, to excuse a party from its admissions when "'(1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result.'" *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, FL-CIO v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y 1996) (citing *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, n.10 (1983)).

---

[11] Plaintiff never made such a motion in this case.

The Court finds that Plaintiff's failure to respond to the RFA is unexcused and, thus, the appropriate portions[12] of the RFA are admitted. *See* Fed. R. Civ. P. 36(a)(3). The Defendants provided sufficient evidence of having sent the RFA to the Plaintiff by way of an affidavit. Defendants' counsel's legal assistant, Michele Sherbo, handled the RFA and mailed it Yovendra Mangal, Plaintiff's first counsel, on September 16, 2014. (Decl. of Neil Torczyner ("Torczyner Decl."), ECF No. 76, Exh. K., "Affidavit of Michele Sherbo" ("Sherbo Aff.") ¶¶ 4–8.) Sherbo also created an Affidavit of Service which she executed. (*Id.* at ¶ 7.)

It is well settled that mailing a RFA creates a presumption that the addressee received it. *S.E.C. v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *6 (S.D.N.Y. Sept. 30, 2002) (citing *Bronia Inc. v. Ho*, 873 F. Supp. 854 (S.D.N.Y 1995)). That presumption is invoked when a party offers evidence of mailing the RFA. *Id.* Much like in *Batterman*, here Plaintiffs offer nothing to rebut the Defendant's evidence that the First RFA was delivered to them besides their assertions that neither they nor their previous counsel received them. It was Plaintiff's first attorney's duty to keep the RFA and transfer the corresponding case files to subsequent counsel. Plaintiffs do not provide any reason for the Court to believe that the RFA was not received nor that the RFA was not properly communicated to them or subsequent counsel. *See Local Union No. 38*, 913 F. Supp. at 294 (noting that *pro se* Plaintiff may not have been aware of RFA because previous counsel provided little, if any, legal advice regarding discovery). [13] In light of Sherbo's affidavit, Plaintiff's assertions, without more, cannot overcome the presumption that Plaintiff received the RFA. *See id.* Accordingly, the statements in the RFA are admitted.

---

[12] That is, those portions that do not amount to admissions of legal conclusions.

[13] Notably absent from Plaintiff's submission are Affidavits from former counsel supplementing Plaintiff's contention that there was a failure to communicate the existence of the RFA.

Considering the admissions in the First RFA, there are no issues of material facts as to MSE's abandonment of the subject site in 2011. *Donovan*, 703 F.2d at 651; *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966) ("It appears well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive"); *Kim v. Goldstein*, No. 04 Civ. 3755(KMW), 2007 WL 1649902, at *2 (S.D.N.Y. June 6, 2007). Notwithstanding any issues of material fact that may exist concerning the existence of a contract, the abandonment of those contractual rights precludes Plaintiff from asserting claims under the contract. According to the admissions, Musa and Sammy instructed Sadallah to notify the proper authority, Brent Coscia, that the keys to the subject station would be returned. (Torczyner Decl., Exh. K., Sherbo Aff., "Def. First Set Req. for Admissions to MS Elmsford Snack Mart, Inc." ¶¶ 11–12.) On or about May 20, 2011, Sadallah, acting on the authority and direction of Sammy and Musa, notified Coscia that the keys to the subject station were being returned. (*Id.* ¶¶ 13–14.) Further, Sammy and Musa authorized Sadallah to prepare the letter to Coscia informing him that MSE would be returning the keys. (*Id.* ¶¶ 18–21.) Sadallah was then authorized to, and eventually, delivered the letter to Coscia. (*Id.* ¶ 24.) On or about May 30, 2011, MSE returned the keys to the subject station with Sammy and Musa's knowledge. (*Id.* ¶¶ 29–34.)

Summary Judgment is proper because there is no issue of material fact as to whether MSE vacated the subject station for reasons not in conformity with the agreements, and that MSE manifested an intention to abandon the contract, MSE returned the keys to NYFD, which means that Coscia would "tak[e] over operations for the station." (Def. 56.1 ¶ 36.)[14] This

---

[14] "Returning the keys" has profound legal significance. In the context of this case, returning the keys does not merely suggest that the Plaintiff vacated the premises, but rather, indicates a complete abandonment of the station, resulting in legal consequences such as waiver of

affirmative conduct evinces an intent to leave the station and end their professional relationship with NYFD because "returning the keys" indicates that MSE was relinquishing the station. That action would certainly be inconsistent with the purported terms of the underlying contracts (that they would merely vacate the station temporarily). *See Fundamental Portfolio Advisors, Inc.*, 850 N.E.2d at 658. MSE acted in a manner inconsistent with the existence of their purported contracts because had MSE intended to resume their responsibilities after construction, they would not have returned the keys to NYFD. Further, the Defendants acquiesced to their behavior by searching for, and securing, new operators for the subject site. Taken together, these facts provide uncontroverted evidence of MSE's abandonment of the contract. Thus, summary judgment is granted on the contract claims.[15]

### Abandoned Claims

Defendants moves for summary judgment on Plaintiff's remaining claims of breach of implied covenant of good faith and fair dealing, fraud, and tortious interference. First, Defendant argues that the Plaintiff did not sufficiently address the claims in their opposition. Second, that Plaintiff failed to specifically address Defendant's contention that the Amended Complaint and discovery do not demonstrate any specific actionable conduct which would allow Defendants

---

contractual rights. The definition of the phrase provided by the parties, and Plaintiff's attempt at distinguishing their actions from "returning the keys," further bolsters this conclusion. (*See e.g.*, Sammy Aff. ¶ 34.)

[15] Plaintiff's also note that the admissions in the RFA are contrary to the Sammy and Musa affidavit. However, it is clear that where a party makes admissions and later produces an affidavit contradicting the admissions, the former controls. *See Kim v. Goldstein*, No. 04 Civ. 3755(KMW), 2007 WL 1649902, at *2 (S.D.N.Y. June 6, 2007) ("To the extent that Plaintiffs' admissions conflict with deposition testimony, the former are controlling . . .Plaintiffs [] may not use deposition testimony to create a genuine issue of material fact as to any fact admitted pursuant to Rule 36.")

James Weil, Marc Weil, Leon Silverman, and New York Dealer Stations to be sued. Plaintiff's

opposition briefly addressed these claims in a footnote. (Pl. Opp. 6 n.2.)[16]

Summary Judgment is a "drastic device since its prophylactic function, when exercised,

cuts off a party's right to present his case to the jury." *Heyman v. Commerce & Industry Ins. Co.*,

524 F.2d 1317, 1320 (2d Cir. 1975). Parties, however, must still abide by the minimum pleading

standards. For example, "in opposing a motion [for summary judgment], a party may not rest

upon mere conclusory allegations or denials." *Eastway Const. Corp. v. City of New York*, 762

F.2d 243, 249 (2d Cir. 1985), *superseded on other grounds by rule*. That opposition must "set

forth 'supporting arguments or facts in opposition to the motion.'" *Id.* (citing *SEC v. Research

Automation Corp.*, 585 F.2d 31, 31 (2d Cir.1978)). The non-moving party must "must set forth

concrete particulars showing that a trial is needed." *Bacon v. Walgreen Co.*, 91 F.Supp.3d 446,

450 (E.D.N.Y. 2015) (quotations and citation omitted).

Plaintiff argues, in passing, that there are several genuine issues of material facts

precluding summary judgment on these claims. (Pl. Opp. 6 n.2.) In making their argument,

---

[16] The lone footnote reads:

> In their moving papers, Defendants argue that MS Elmsford has failed to adduce any proof in discovery to support its causes of action for (i) unjust enrichment, (ii) breach of implied covenant of good faith and fair dealing, and (iii) tortious interference with contract. As discussed, MS Elmsford is at an unfair disadvantage given that its records were taken by Defendants when Defendants vacated the Thornwood Office. See Sammy Aff. at ¶¶38-41; Musa Aff. at ¶¶36-39. As such, MS Elmsford is left with little documentary evidence to support such claims. It is respectfully submitted that for the reasons discussed in (i) MS Elmsford's Counter Statement of Material Facts in Response to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1; (ii) the Sammy Aff.; (iii) the Musa Aff.; and (iv) the Khalife Dec., several genuine issues of material facts exist precluding summary judgment on MS Elmsford's claims for unjust enrichment, breach of implied covenant of good faith and fair dealing and tortious interference with contract.

(Pl. Opp. 6 n.2.)

Plaintiff asks the Court to rely on the "reasons discussed" in their 56.1 counter statement, the Sammy Affidavit, the Musa Affidavit, and the Khalife Declaration.

Without pointing to specific facts, evidence, relevant case law, or the elements of the claims, Plaintiff expects the Court to scour the record, locate issues of material facts, and formulate proper arguments that correspond to the relevant elements of the claim. The Court is not required to scour the record looking for factual disputes. *Scott v. City of New York Dept. of Correction*, 641 F. Supp. 2d 211, 219 (S.D.N.Y. 2009); *Meaney v. CHS Acquisition Corp.*, 103 F. Supp. 2d 104, 110 (N.D.N.Y 2000) ("The Court is not required to scour the record looking for factual disputes . . . [nor] to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case") (quotations and citation omitted). The Court declines to do so and finds that the Plaintiff's anemic opposition to summary judgment is fatally defective. Thus, summary judgment on these claims is granted because the Plaintiff did not sufficiently, nor entirely, oppose the Defendants' motion, but rather provided conclusory allegations and denials without setting forth particular arguments or facts in opposition to Defendants Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 75, to enter judgment in favor of the Defendants, and to close this case.

Dated:   March 5, 2018
          White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge